**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| PABLO GOMEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:13-CV-84-SNLJ |
| | ) | |
| TRACY ALLAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of Pablo Gomez (registration no. 185004) for leave to commence this action without payment of the required filing fee.  For the reasons stated below, the Court will grant the motion and assess plaintiff an initial partial filing fee of $8.00.  *See* 28 U.S.C. § 1915(b)(1).  Furthermore, based upon a review of the complaint, the Court finds that this action should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee.  If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the

greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account.  28 U.S.C. § 1915(b)(2).  The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid.  *Id.*

Plaintiff has submitted an affidavit and a certified copy of his prison account statement for the six-month period immediately preceding the submission of his complaint.  A review of plaintiff's account indicates an average monthly deposit of $40.00, and an average monthly balance of $18.56.  Plaintiff has insufficient funds to pay the entire filing fee.  Accordingly, the Court will assess an initial partial filing fee of $8.00, which is 20 percent of plaintiff's average monthly deposit.

## 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.  An action is frivolous if "it lacks an arguable basis in either law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 328 (1989).  An action fails to

-2-

state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In reviewing a pro se complaint under § 1915(e)(2)(B), the Court must give the complaint the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court must also weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

### The Amended Complaint

Plaintiff, an inmate at Southeast Correctional Center ("SECC"), brings this action pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). In addition, plaintiff seeks damages for a violation of the Missouri Human Rights Act ("MHRA") and other state statutes. Named as defendants are Tracy Allan (Human Rights Officer, Missouri Commission on Human Rights), Ian Wallace (Warden, SECC), Jody Ruminer (Factory Manager, SECC Missouri Vocational Enterprise), Unknown SECC Investigator, and Unknown SECC Staff Member. Plaintiff's allegations arise out of numerous issues he encountered while working and training at SECC's "Missouri Vocational Enterprise

Furniture Factory" ("SECC Furniture Factory").  He is suing defendants in their official and individual capacities.

## I.  Official Capacity Claims

Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official, in this case the State of Missouri.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Because "neither a State nor its officials acting in their official capacity are 'persons' under § 1983," *id.,* the instant amended complaint is legally frivolous and fails to state a claim upon which relief can be granted as to all defendants in their official capacities.  As such, the Court will dismiss these claims pursuant to 28 U.S.C. § 1915(e)(2)(B).

## II.  Individual Capacity Claims

### A.   First and Fourteenth Amendment claims against defendant Tracy Allan

Plaintiff alleges that he was subjected to a hostile work environment and numerous instances of employment discrimination while working at the SECC Furniture Factory. He further alleges that when he attempted to file a claim for employment discrimination with the Missouri Commission on Human Rights ("MCHR"), defendant Tracy Allan informed him that "the law does not cover

-4-

incarcerated situations," because the MHRA does not does not consider him to be in an employment relationship.  Plaintiff claims that, in failing to investigate his employment discrimination claims, Allan violated his First Amendment "right to petition the government for redress of grievances," as well as his Fourteenth Amendment due process and equal protection rights.

Having carefully reviewed plaintiff's amended complaint, the Court will dismiss this action as to defendant Tracy Allan, because the allegations are legally frivolous and fail to state a claim or cause of action for the violation of his First and/or Fourteenth Amendment rights under § 1983.  Plaintiff is not an "employee" under either Title VII or the MHRA, because his relationship with the Missouri Department of Corrections, and therefore, with the defendants in this action, arises out of his status as a prisoner, not an employee.  *See Battle v. Minnesota Dep't of Corrections*, 40 Fed. Appx. 308, 309, 2002 WL 1370059 (8th Cir. 2002) citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (inmate not protected by Title VII because he was not in an employment relationship).  In other words, his relationship with the SECC Furniture Factory was peneological, not pecuniary.  *See Wade v. California Dep't of Corrections*, 171 Fed. Appx. 601, 602 (9th Cir. 2006).

In addition to plaintiff not being an "employee," he has failed to establish a protected liberty or property interest upon which to base his Fourteenth Amendment due process claim, *see Callender v. Sioux City Residential Treatment Facility*, 88 F.3d 666, 668-69 (8th Cir. 1996), and he has not identified any similarly-situated inmates who were allowed to file discrimination claims with the MCHR, *cf. id.* (equal protection analysis). Furthermore, plaintiff's claim that, by failing to investigate his MHRA claims, Allan violated his First Amendment right to petition the government for redress of grievances is simply frivolous.

### B. Fourteenth Amendment equal protection and due process claims against defendant Jody Ruminer

Plaintiff states that his "religion is Jewish and [his] parents' national origin is Puerto Rico." He alleges that in February 2012, after requesting cross-training on certain positions at the SECC Furniture Factory, defendant Jody Ruminer called an "inner-circle" meeting, at which other inmates voted on whether they wanted to work with plaintiff while training on the "CHC machine." Most of the inmates voted that they did not want to work with him; however, the decision was overruled by the factory manager, Dan Smith.[1]

---

[1]Dan Smith is not a defendant in this action.

Plaintiff began to work on the CHC machine in March 2012. He states that after beginning his training, he began to experience employment discrimination. For example, after noticing that someone had deleted computer help files that he needed to learn how to operate the CHC machine, plaintiff went to another computer to copy the help files, but a fellow inmate, Brent Sarten, who was also plaintiff's trainer, reported him for doing this, and plaintiff found himself reassigned to the "sand line." Plaintiff states that he was, however, initially given permission to continue to train on the CHC machine during his break periods. Plaintiff claims that, at some point, inmate Brent Sarten convinced defendant Ruminer to put a sign in the CHC machine area, stating "The CHC machine area is not a break area." In mid-June of 2012, inmate Sarten convinced Ruminer to modify the shop floor rule so as to restrict prisoners from entering the CHC machine area during break periods unless they had prior approval from a staff supervisor. Plaintiff claims he obtained supervisor permission to enter the CHC machine area, but shortly later, Ruminer changed the rule again and made the CHC machine "off limits." Plaintiff states that, in response to the new rule, he "asked Dan Smith for a meeting concerning defendant Ruminer's new shop rule preventing [him] from training on the CHC machine during break periods."

Plaintiff's instances of alleged employment discrimination continued after he was reassigned to the sand line.  For example, plaintiff states he noticed that "somebody began scuffing [his] work product."  In May 2012, defendant Ruminer called a group meeting of the factory workers, because the "dark oak chairs were being rejected by the stain line."  Plaintiff informed Ruminer that none of the defective chairs were his, because he "walked all his finished work product directly to the stainer."  Nevertheless, Ruminer "layed the plaintiff in for four (4) days." Plaintiff states that after Dan Smith returned from vacation, plaintiff "explained to [him] that he had a zero return for defective work product."

Plaintiff additionally claims that on June 18, 2012, defendant Ruminer subsequently gave him a two-week lay-in without pay for verbally complaining about co-worker sabotage to a work supervisor named Randy Carter.[2]  Plaintiff states that he was on his way to talk to Dan Smith about this lay-in, when "Ruminer diverted [him] . . . by yelling, 'Leave it alone!'"  Plaintiff approached Ruminer and, although plaintiff claims he never physically touched Ruminer, plaintiff was given a conduct violation for assault.  Plaintiff summarily claims that "Ruminer's hostility [was] directed at [him] because of his religion and national origin and to punish [him] for opposing defendants' unlawful employment practices."  He further states,

---

[2]Randy Carter is not a named defendant in this action.

-8-

> Ruminer's discriminatory acts and practices herein set forth
> are intended to and have and will have the effect of
> discriminating against [him] with respect to terms,
> conditions and opportunities of employment because of his
> religion and national origin in violation of his right to
> equal employment opportunity.

Plaintiff alleges that "Ruminer or an inmate co-worker acting in concert with [him]
acted to harass the plaintiff."  Plaintiff continues, "In response to the unwelcome
harassment, [he] complained to a supervisor . . . [and] Ruminer or other supervisor
responded to the plaintiff's verbal complaint by adversely affecting the plaintiff's
conditions of employment."  Plaintiff asserts that Ruminer intentionally wrote a false
disciplinary charge in retaliation for the plaintiff verbally complaining to a superior
about a "vindictive lay-in," and in so doing, violated plaintiff's Fourteenth
Amendment equal protection and due process rights.  Plaintiff was given ten days in
disciplinary segregation, but was released after only four days and was "placed on
general population bed space."

At the outset, the Court notes that a prisoner does not have a constitutional
right to employment while incarcerated, *James v. Quinlan*, 866 F.2d 627, 630 (3d Cir.
1989), and plaintiff had no independent constitutional right to be assigned to a
particular job during his confinement at SECC, *see Wishon v. Gammon*, 978 F.2d 446,
450 (8th Cir. 1992).  Moreover, with regard to plaintiff's Fourteenth Amendment

claims, the Equal Protection Clause requires the government to treat all similarly-situated people alike, and "[a]s a threshold matter, '[t]o state an equal protection claim, [a plaintiff] must have established that [he was] treated differently from others similarly situated.'" *Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006) (quoting *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998)). Thus, the equal protection doctrine is rooted in a comparison of the actual treatment accorded one person with that actually accorded other persons or class of persons, not in a comparison of the actual treatment accorded one person as measured against the ideal treatment, proscribed by the norms of state law, which that single person should have received.  In the latter situation, there is simply no discrimination, invidious or otherwise.

In the instant case, plaintiff summarily alleges that he was qualified to train on the CHC machine and that "the employer offered CHC machine operator training to other less qualified persons outside his protected class."  Plaintiff, however, has failed to provide any further factual allegations of discriminatory treatment relative to training on the CHC machine.  Because plaintiff has failed to allege any non-conclusory facts indicating that defendant Jody Ruminer invidiously discriminated against him in favor of another person or class of persons*,* with no rational basis for any differentiation in treatment, his equal protection claim will be dismissed under

-10-

§ 1915(e)(2)(B).  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009) (legal conclusions and threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements are not entitled to the assumption of truth).

Similarly, plaintiff's allegations relative to defendant Ruminer's course of conduct towards him do not implicate constitutionally-protected Fourteenth Amendment due process interests.  Although plaintiff alleges that Ruminer gave him two lay-ins, in order for the Due Process Clause to be implicated, an inmate must be subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472 (1995).  Plaintiff's allegations do not indicate that he has suffered this type of atypical and significant hardship, nor do they indicate that he has suffered the type of hardship in which the state might conceivably create a liberty interest.  *Cf. id.* at 485-86 (no atypical and significant hardship where inmate spent thirty days in solitary confinement); *Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998)(same; two and a half years in administrative segregation); *Hemphill v. Delo*, 124 F.3d 208 (8th Cir. 1997) (same; four days locked in housing unit, thirty days in disciplinary segregation, and approximately 290 days in administrative segregation); *Freitas v. Ault*, 109 F.3d 1335, 1337-38 (8th Cir. 1997) (same; ten days administrative segregation and thirty days on "on-call" status, as well

-11-

as loss of higher paying job and numerous privileges).   For these reasons, the Court

will dismiss plaintiff's Fourteenth Amendment due process claims.[3]

### C.   Claims against defendants Ian Wallace, Unknown SECC Investigator, and Unknown SECC Staff Member

On June 26, 2012, after receiving the allegedly false conduct violation on June

18, 2012, plaintiff states that he filed an IRR; he filed a grievance on June 27, 2012.

He complains that defendant Unknown SECC Investigator investigated the grievance,

but failed to review "the surveillance video" and failed to give Ruminer a lie detector

test.   Plaintiff goes on to claim that if surveillance video had existed, it would have

---

[3]Even if the Court were to liberally construe plaintiff's allegations as stating that Ruminer violated his First Amendment rights by retaliating against him for verbally complaining to Dan Smith and/or Randy Carter, the claim would fail.  *See St. Louis v. Morris*, 573 F.Supp.2d 846, 853 (D. Del. 2008) (informal, verbal complaints made to prison officials reporting alleged institutional violations in the prison kitchen were insufficient to support First Amendment retaliation claim)*; see also Johnson v. Carroll*, 2012 WL 2069561, *33 (E.D. Cal. 2012) (an inmate's verbal challenges or rantings to correctional staff are not within the ambit of First Amendment protections), citing *Young v. Moreno*, 2012 WL 1836088, *4 (D. Cal., May 08, 2012)   (prisoner's verbal confrontation with correctional officer not protected speech), and cases cited therein; *Nuez v. Ramirez*, 2010 WL 1222058, *4 (S.D. Cal. 2010) (rejecting plaintiff's contention that "directly [verbally] confronting a correctional officer who was attempting to enforce an indisputably valid prohibition" was protected speech); *McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005) (following announcement that prison sewing shop would be closing, inmate's inquiry into lay-in pay were not protected speech as would be necessary to satisfy a First Amendment retaliation claims's requirement of constitutionally-protected activity); c*f. Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so).

shown that he did not assault Ruminer.  In the alternative, he claims that if a video did not exist, it was because defendant Unknown SECC Staff Member either performed a "reckless investigation" and "did not get [it] recorded," or he "acted in bad faith in destroying [it]."  Plaintiff complains that his constitutional due process rights were violated by the "destruction or unavailability of the surveillance video."   Plaintiff further claims that defendant Ian Wallace "or his delegate signed his approval of the [reckless] investigation done by 'Unknown SECC Investigator' (deliberate indifference)" and should be held accountable for his supervisory liability.

Plaintiff's allegations against defendants Wallace, Unknown SECC Investigator, and Unknown SECC Staff Member do not rise to the level of constitutional violations under § 1983.  Plaintiff does not have a constitutionally-guaranteed right to have an investigation and video recording of all incidents that give rise to conduct violations, and even if he did, the facts of this case do not implicate protected liberty interests.  *See Sandin*, 515 U.S. at 484 (protected liberty interest is generally limited to freedom from restraint that imposes atypical and significant hardship on inmate in relation to ordinary incidents of prison life). Moreover, the respondeat superior theory of liability is inapplicable in § 1983 suits. *See  Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff

-13-

fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff).  For these reasons, the Court will dismiss this action as to defendants Wallace, Unknown SECC Investigator, and Unknown SECC Staff Member.

### III.  Title VII Claims

Plaintiff also brings this action under Title VII for numerous instances of employment discrimination, including "religious discrimination, national origin discrimination, retaliation, hostile work environment, and denial of training opportunity."  These claims must fail, because, as previously explained, plaintiff is not an "employee" for purposes of Title VII.  *See Battle*, 40 Fed. Appx. at 309, 2002 WL 1370059, citing *Williams*, 926 F.2d at 997 (inmate not protected by Title VII because he was not in an employment relationship).  As such, the Court will dismiss plaintiff's Title VII claims pursuant to 28 U.S.C. § 1915(e)(2)(B).

### IV.  Pendent State-Law Claims

Plaintiff seeks monetary damages for the violation of the MHRA and various Missouri statues;[4] however, because all of his federal claims will be dismissed, the Court will also dismiss his remaining pendent state-law claims.  *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127, 1130 (8th Cir. 1988) (where

---

[4]Specifically, plaintiff claims that defendant Ruminer "engaged in unlawful employment practices with respect to [him] in violation of the MHRA/Title VII and the Equal Protection Clause in such a manner as to violate the retaliation provision [213.070(2) RSMo/§704(1)], the training opportunity provision [213.055(1)(a) RSMo/§ 703(a)(1)] because of [his] religion and national origin."

federal claims have been dismissed, district courts may decline jurisdiction over pendent state claims as a "matter of discretion").

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [Doc. #2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff shall pay an initial filing fee of $8.00 within thirty (30) days of the date of this Order.  Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk shall not issue process or cause process to issue upon the complaint, because the complaint is legally frivolous and fails to state a claim upon which relief can be granted.  *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #4] is **DENIED** as moot.

A separate Order of Dismissal shall accompany this Memorandum and Order.

Dated this <u>4th</u> Day of December, 2013.


_____

UNITED STATES DISTRICT JUDGE